# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# NEWNAN DIVISION

| | |
|---|---|
| DOMINIQUE RILEY, ) | |
| ) | |
| *Plaintiff*, ) | Civil Action File No. |
| ) | |
| v. ) | |
| ) | |
| CITY OF GRIFFIN, GEORGIA; TODD ) | |
| ENNIS, in his official capacity as Solid ) | |
| Waste Director for the City of Griffin, ) | |
| Georgia and in his individual capacity ) | |
| ) | JURY TRIAL DEMANDED |
| *Defendant*. ) | |
| ) | |
| ) | |

## COMPLAINT

Dominique Riley ("Plaintiff") files this Complaint against Defendant City of Griffin, Georgia ("Griffin" or "Defendant") and Todd Ennis ("Mr. Ennis" or "Individual Defendant"). Plaintiff respectfully shows this Court as follows:

## INTRODUCTION

1. This action is for sexual harassment and retaliation arising under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §2000e, *et seq*. ("Title VII"), and related state-law claims. Plaintiff seeks declaratory and injunctive relief,

1

back pay, front pay, compensatory damages, punitive damages, liquidated damages, and attorney's fees and costs.

## JURISDICTION AND VENUE

2. Plaintiff's Title VII claims present federal questions over which the Court has jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. §2000e-5(f)(3).

3. Plaintiff further invokes pendant jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to hear and decide claims arising under the laws of the State of Georgia for assault, battery, negligent supervision, and negligent retention.

4. Venue is appropriate in this Court as upon information and belief the events complained of herein occurred within the geographic boundaries of the U.S. District Court for the Northern District of Georgia and upon information and belief all parties to this action reside within the geographic boundaries of the United States District Court for the Northern District of Georgia. Venue is proper pursuant to 28 U.S.C. § 1391 (b) and (c).

## PARTIES

5. Plaintiff is a resident of the State of Georgia.

6. Griffin is a local municipality and governmental entity in the State of Georgia.

7. Griffin is subject to this Court's jurisdiction.

8. Mr. Ennis is the Director of Solid Waste for Griffin. At all times material hereto, Mr. Ennis acted in his official capacity as an agent, legal representative, and employee of Griffin.

## ADMINISTRATIVE PROCEEDINGS

9. On October 21, 2021, Plaintiff filed a timely charge of sexual harassment and retaliation with the Equal Employment Opportunity Commission ("EEOC").

10. On January 13, 2022, Plaintiff filed an amended charge of sexual harassment and retaliation with the EEOC.

11. On January 5, 2024, Plaintiff received a notice of right to sue from the EEOC.

12. Plaintiff has exhausted her administrative remedies prerequisite to the filing this suit pursuant to Title VII.

13. This lawsuit has been filed within 90 days of Plaintiff's receipt of her notice of right to sue.

## STATEMENT OF FACTS

14. Griffin is a municipality located in Spalding County, Georgia.

15. During all time relevant to this lawsuit, Defendant employed more than fifteen (15) employees for each working day during each of twenty (20) or more calendar weeks during Plaintiff's employment.

16. Griffin is subject to the anti-discrimination and anti-retaliation provisions of Title VII.

17. Plaintiff is female.

18. Plaintiff was an employee of Griffin at all times material to this Complaint.

19. Plaintiff began employment with Griffin in 2012.

20. Plaintiff was the Administrative Coordinator and then Office Administrator of the Solid Waste Department for Griffin.

21. Plaintiff's duties included handling billing and payroll for the Solid Waste Department, responding to customer complaints and concerns, and coordinating office functions.

22. Plaintiff reported to Phil Francis ("Mr. Francis"), the Solid Waste Director, from the date of her hire until Mr. Francis's retirement on or about August 14, 2020.

23. Mr. Ennis was hired as the director replacing Mr. Francis on or about November 2, 2020.

24. Upon her hire, Plaintiff began reporting to Mr. Ennis.

25. In July 2021, Plaintiff met with Jessica O'Connor ("Ms. O'Connor"), the City Manager for Griffin, concerning the behavior of Mr. Ennis, Richard Arnold ("Mr. Arnold"), Rico Starks ("Mr. Starks"), and Sue Stubbs ("Ms. Stubbs"), coworkers who had made harassing comments to Plaintiff in the past.

26. Plaintiff also reported to Ms. O'Connor that when she informed Mr. Ennis about her intention to apply for another job in the Solid Waste Department, Mr. Ennis told her not to waste her time with the application because he would not waste his time to interview her.

27. Plaintiff understood that any internal employee would be extended the courtesy of an interview and felt that she was being treated differently than similarly situated employees because she complained about harassing behavior.

28. On July 26, 2021, Plaintiff applied for a Key Accounts Specialist position in the Electric Department, which she interviewed well for but was not hired.

29. In August 2021, Plaintiff was harassed and brought to tears by Ms. Stubbs, who often called Plaintiff a stripper and a gold digger among other hurtful statements.

30.     Plaintiff repeatedly told Ms. Stubbs that her comments were upsetting and made her uncomfortable and to stop but to no avail.

31.     Ms. Stubbs was also often combative with Plaintiff when Plaintiff, in the course of her job duties, would give Ms. Stubbs direction or guidance.

32.     This often happened in front of Mr. Ennis, but he made no effort to stop Ms. Stubbs's behavior or protect Plaintiff from further harassment from Ms. Stubbs.

33.     On September 27, 2021, Plaintiff applied for a Citizen's Engagement Specialist position in the City Manager's Office but again was not hired.

34.     On or about October 15, 2021, the Solid Waste Department scheduled a team lunch, and Mr. Ennis asked Plaintiff to go pick it up.

35.     Plaintiff asked for help since it was a large order.

36.     Both Mr. Ennis and Ms. Stubbs refused Plaintiff's request for help and stated that Plaintiff was pretty enough to find help from a man.

37.     On or about September 29 and October 18, 2021, Plaintiff met with Mr. Ennis about not clocking in, even though it was common practice in the department for people to not clock in and out.

38.     In fact, one of Plaintiff's duties was to manually enter time for most of the employees in the department because it was so common for them to not clock in and/or out.

39. Other employees were not held to the same standard as Plaintiff regarding timekeeping.

40. Often, employees would aggressively confront Plaintiff if they felt that she had altered their time, even though it was on of her duties to correct and maintain payroll.

41. Plaintiff had employees confront her in the parking lot and by coming into her office and shoving check stubs at her, demanding to know why their check was not what they thought it should be.

42. On or about October 18, 2021, Plaintiff asked Mr. Ennis if there was a way that payroll could be moved under someone else's purview because of the stress it was causing and the fear she felt about what her colleagues would do if they didn't agree with their check.

43. Mr. Ennis denied Plaintiff's request.

44. On or about October 20, 2021, Plaintiff had a meeting scheduled with Mr. Ennis and Ms. Woods to further discuss concerns with the way she was treated and the intense pressure of managing payroll.

45. Approximately 30 minutes before the meeting, Ms. Woods stated that she would be unable to attend but that Plaintiff and Mr. Ennis should meet without her.

46. Plaintiff immediately had a panic attack at the thought of meeting with Mr. Ennis without an HR representative.

47. Plaintiff immediately contacted her doctor and scheduled an appointment.

48. Plaintiff met with her doctor and explained the stress she was feeling because of the harassment and stress at work, and her physician advised her to take two (2) to four (4) weeks away from work.

49. On or about October 21, 2021, Plaintiff's physician completed the Certification of Health Care Provider form required to apply for FMLA leave, recommending Plaintiff not return before November 20, 2021.

50. Plaintiff's FMLA leave was approved but only through November 5, 2021, instead of giving Plaintiff the full four weeks her doctor recommended.

51. Plaintiff felt intense pressure to return to work on November 5 because she was afraid of losing her job, even though her doctor did not want her to return at that point.

52. Upon Plaintiff's return to work on November 5, 2021, she informed Ms. Woods that she was planning on filing a charge with the EEOC concerning the harassing and retaliatory behavior she was facing.

53. Ms. Woods followed this up by repeatedly asking Plaintiff if she'd slept with anyone in the office and why other employees had her personal cell phone number.

54. Plaintiff explained that she did not have a city-owned phone when she began working for Griffin and thus had to give out her personal number.

55. Plaintiff also told Ms. Woods that she was afraid to give too much information because she'd reported harassment before, and nothing had been done by Griffin to protect her from further harassment.

56. Ms. Woods again suggested that Plaintiff apply for a position in another department, but each time Plaintiff tried previously to do just that, she was not hired.

57. On December 8, 2021, Mr. Ennis gave Plaintiff a written warning for failing to clock in since December 6, 2021.

58. Plaintiff felt as though the write-up was in retaliation for telling Ms. Woods that she intended to file an EEOC charge since she had never been written up previously for not clocking in and had been employed since 2012.

59. On December 14, 2021, Mr. Ennis gave Plaintiff another written warning for not clocking in properly for the same dates that she had already been disciplined for on December 8.

60. Plaintiff then emailed Ms. O'Connor and Ms. Woods about the second write-up, explaining that it was for the same dates as the December 8, 2021, write-up and that she was at a breaking point because of the retaliatory behavior.

61. Plaintiff told Mr. Ennis that she knew the write-up was retaliatory in nature.

62. Mr. Ennis then locked his office door and left the building.

63. Plaintiff then stepped outside because she felt like she was going to have a panic attack.

64. Mr. Ennis saw Plaintiff outside, got out of his truck, and aggressively walked toward Plaintiff.

65. Plaintiff was afraid of Mr. Ennis and instinctively responded with profanity.

66. On or about December 15, 2021, Plaintiff requested another meeting with Ms. Woods and Mr. Ennis. At no point had Plaintiff been told she would be disciplined for the interaction on the previous day.

67. In fact, Plaintiff states that the use of profanity was fairly common in the office and that she had never been counseled about it prior to this incident.

68. Plaintiff also recalls that in the meeting, Mr. Ennis did not bring up the use of profanity until Ms. Wood told him that the December 15 write-up of Plaintiff was unnecessary and unwarranted.

69. Plaintiff requested the meeting in order to acknowledge the incident and tell Ms. Woods that she felt as though she was being forced to choose between her mental health and her job.

70. Plaintiff also stated in the meeting that she felt she was being retaliated against for filing a charge with the EEOC, since she had already been written up twice since her return from FMLA.

71. On December 17, 2021, Mr. Ennis placed Plaintiff on Administrative Leave with pay and informing her of a disciplinary conference concerning the incident on December 14, 2021.

72. In the conference, Plaintiff stated that she would like to have an EEO officer present.

73. Mr. Ennis ignored this request of Plaintiff and said that he was going to "move forward" without any further discussion.

74. On or about December 22, 2021, Plaintiff met with Ms. O'Connor concerning Mr. Ennis's recommendation that she be terminated for use of profanity.

11

75. On or about January 13, 2022, Ms. O'Connor sent Plaintiff a letter finding that Mr. Ennis's recommendation for Plaintiff's termination was supported.

76. Plaintiff was terminated with the effective date of January 13, 2022.

77. On January 14, 2022, Ms. O'Connor sent Plaintiff another letter changing her termination date to January 24, 2022, allowing her to satisfy the requirement of 10 years of service to be vested in the Pension Plan.

## COUNT I
## Sexual Harassment in Violation of Title VII

78. Plaintiff incorporates by reference the preceding Paragraphs as if fully restated herein.

79. As a female, Plaintiff is a member of a protected group.

80. As detailed above, throughout her employment with Griffin, Plaintiff was subjected to sexual harassment and a hostile work environment by both supervisors and coworkers.

81. All the above conduct by was unwelcome, offensive, and intimidating to Plaintiff as well as open and obvious in the workplace.

82. Plaintiff complained that the sexually harassing conduct was unwelcome.

83. At all times relevant to this action, Griffin knew from past complaints or should have known of the sexual harassment endured by Plaintiff as well as the

existence of a sexually harassing work environment, and they failed to meaningfully remedy the workplace environment to protect Plaintiff.

84. Griffin willfully and wantonly disregarded Plaintiff's rights. Additionally, Griffin's discrimination and retaliation against Plaintiff was undertaken in bad faith and constitutes unlawful, intentional gender discrimination in violation of Title VII.

85. As a result of Griffin's unlawful actions, Plaintiff has suffered emotional distress, inconvenience, loss of income and benefits (past and future), humiliation, and other indignities. Plaintiff seeks all damages available.

86. Plaintiff seeks all remedies available by law or equity.

## COUNT II
## Retaliation in Violation of Title VII

87. Plaintiff incorporates by reference the preceding paragraphs as if fully restated herein.

88. Plaintiff engaged in protected activities protected under Title VII by making complaints of sexual harassment.

89. As a result of her complaints of sexual harassment, Plaintiff suffered adverse employment actions including but not limited to being denied promotions and being terminated.

90. As a direct and proximate result of Griffin's unlawful discriminatory and retaliatory actions, Plaintiff has suffered lost wages and other benefits of employment, significantly diminished employment opportunities, inconvenience, loss of income, and emotional distress, including but not limited to outrage, shock, and humiliation because she exercised her rights under Title VII.

91. Defendant willfully and wantonly disregarded Plaintiff's rights, and Defendant's discrimination and retaliation against Plaintiff was undertaken in bad faith.

92. As a result, Plaintiff is entitled to both equitable and monetary relief in all forms provided by law.

93. Plaintiff seeks all remedies available to him by law or equity.

**WHEREFORE**, Plaintiff demands an arbitration and the following relief:

(a) cause process to issue;

(b) issue a declaratory judgment that Griffin's acts, policies, practices, and procedures complained of herein violated Plaintiff's rights under Title VII and state law;

(c) grant Plaintiff a permanent injunction enjoining Griffin, their officers, agents, successors, employees, attorneys, and those acting in concert with them, from engaging in any employment practice or policy which discriminates against

the Plaintiff and others similarly situated because of the exercise of their rights under Title VII or because of their participation in this lawsuit;

(d) grant Plaintiff judgment in her favor and against each Defendant under all Counts of this Complaint;

(e) order Defendant to make the Plaintiff whole by providing for her out-of-pocket losses as well as back pay in an amount equal to the sum of any wages, salary, employment benefits or other compensation denied or lost as a result of Defendant's unlawful and discriminatory acts, together with interest thereon, all in an amount to be proven at trial;

(f) grant to Plaintiff compensatory and punitive damages for Defendant's willful violations of Title VII;

(g) grant to Plaintiff reasonable attorney's fees together with any and all other costs associated with this action as provided by Title VII and state law violations; and

(h) grant Plaintiff all other damages including nominal damages, available by law.

(i) grant such additional relief as this court deems proper and just.

Respectfully submitted on this 4th day of April, 2024.

                                                <u>/s/ J. Stephen Mixon</u>
                                                J. Stephen Mixon
                                                Georgia Bar No. 514050
                                                Attorney for Plaintiff

THE MIXON LAW FIRM
3344 Peachtree Street, Suite 800
Atlanta, Georgia 30326
Phone: 770-955-0100
steve@mixon-law.com